J. S73011/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRYAN JOHN MOYER, | : | No. 1947 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, November 13, 2015,
in the Court of Common Pleas of Potter County
Criminal Division at Nos. CP-53-CR-0000058-2005,
CP-53-CR-0000138-2005

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRYAN MOYER, | : | No. 1948 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, November 13, 2015,
in the Court of Common Pleas of Potter County
Criminal Division at Nos. CP-53-CR-0000057-2005,
CP-53-CR-0000058-2005, CP-53-CR-0000138-2005

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRYAN MOYER, | : | No. 1949 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, November 13, 2015,
in the Court of Common Pleas of Potter County
Criminal Division at Nos. CP-53-CR-0000057-2005,
CP-53-CR-0000058-2005, CP-53-CR-0000138-2005

J. S73011/16

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　**FILED DECEMBER 09, 2016**

Bryan Moyer appeals **pro se** from the November 13, 2015 order denying his second amended petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

A prior panel of this court summarized the relevant factual background of this case as follows:

> Appellant repeatedly molested five boys, T.O., B.B., J.G., C.L., and M.K., who attended the same daycare center as [a]ppellant's son.  Most of the abuse occurred at [a]ppellant's home while the victims were visiting his son.  All of the boys, who were between three and six years old when they were assaulted, averred that [a]ppellant fondled their genitals; one victim, B.B., also claimed that [a]ppellant sucked his penis and inserted a finger into B.B.'s rectum.  Appellant was charged in three separate informations [at Nos. CP-53-CR-0000057-2005, CP-53-CR-000058-2005, and CP-53-CR-0000138-2005] because police were unaware of the full extent of the abuse until the media reported that [a]ppellant had been charged with sexually assaulting a minor, and additional victims reluctantly admitted that they too had been molested.

**Commonwealth v. Moyer**, 947 A.2d 829 (Pa.Super. 2008), **appeal denied**, 960 A.2d 838 (Pa. 2008) (unpublished memorandum at 1-2).

The remaining procedural history of this case was summarized by the PCRA court as follows.

Prior to [appellant's] preliminary hearing, sometime in February of 2005, [appellant], his counsel, James Rague and District Attorney Jeff Leber met and discussed the possibility of a plea agreement. At [appellant's] preliminary hearing on March 24, 2005 [appellant] did not mention any plea agreement and [appellant's] cases were bound over for trial. [Appellant] filed a pretrial motion seeking to dismiss the case on Pa.R.Crim.P. 600 grounds; however, the motion was dismissed by memorandum opinion on February 3, 2006. Following a jury trial which occurred from April 4th through April 7th, 2006, [appellant] was convicted of [10 counts of endangering the welfare of children, 19 counts of indecent assault, 9 counts of corruption of minors, 4 counts of rape, and 5 counts of involuntary deviate sexual intercourse ("IDSI").[1]] [F]ollowing a sentencing reduction, [appellant] was sentenced to a period of incarceration of 19 years and 3 months to 46 years.

[Appellant] filed post sentence motions, including a motion relating to Pa.R.Crim.P. 704, which was denied. [Appellant] appealed to the Pennsylvania Superior Court[,] which affirmed the trial court on January 3, 2008. [Appellant] sought an allowance of appeal with the Pennsylvania Supreme Court[,] which was denied on November 17, 2008. [Appellant] filed a timely *pro se* PCRA Petition on October 21, 2009 and counsel was appointed by Judge John Leete (now Senior Judge) on October 28, 2009. After the appointment, the defense counsel accepted a law clerk position and failed to take action on behalf of the Petitioner. No amended petition was filed and it is unclear whether defense counsel was aware of the appointment as he was in the middle of transition to his new position. Thereafter, Judge Stephen Minor was elected President Judge of Potter County and took the bench in January 2010. No amended Petition was filed and neither defense counsel, nor [appellant] communicated with the [PCRA c]ourt.

---

[1] 18 Pa.C.S.A. §§ 4304, 3126(a)(7), 6301, 3121, and 3123, respectively.

> Thereafter on September 12, 2014[,] Judge Minor became aware of the matter when [appellant] filed a *pro se* Amended PCRA Petition. New defense counsel was appointed and, with the assistance of counsel, [appellant] filed a Second Amended PCRA Petition on February 5, 2015. Following multiple continuances a hearing was held on [appellant's] Second Amended PCRA Petition on July 10, 2015.

PCRA court opinion, 11/13/15 at 1-2.

Following the hearing, the PCRA court dismissed appellant's second amended PCRA petition on November 13, 2015. The PCRA court authored a comprehensive, 19-page opinion in support of its November 13, 2015 order denying appellant's petition. (*See id.*) This timely appeal followed on November 30, 2015. On December 3, 2015, the PCRA court ordered appellant to file a concise statement of errors raised on appeal in accordance with Pa.R.A.P. 1925(b). On December 18, 2015, appellant complied with the PCRA court's directive and filed his Rule 1925(b) statement.[2]

Appellant raises the following issues for our review:

> 1. Whether [the] PCRA Court committed an abuse of discretion or an error of Law by not granting PCRA relief where Trial Counsel failed to reduce a negotiated plea to writing, failed to properly raise Rule 600 issues, referenced other alleged victims, failed to effectively argue Rule 704 issues, failed to object to altered and shortened video interviews, failed to

---

[2] The record reflects that on December 21, 2015, appellant indicated to the PCRA court and his then-counsel, Richard W. McCoy, Esq., that he wished to proceed *pro se*. Following a hearing in accordance with *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), the PCRA court determined that appellant intelligently, knowingly, and voluntarily waived his right to representation and granted his request to proceed *pro se* on February 1, 2016.

appropriately challenge the replacement of a juror, failed to present and challenge mandatory minimum sentencing, failed to object to expert witness, failed to call available expert and lay witnesses, and, failed to object to hearsay and other inadmissible testimony?

2. Whether the PCRA Court committed an abuse of discretion or committed an error of Law by not granting PCRA relief where prosecutorial misconduct rendered the trial fundamentally unfair and the verdict unworthy of confidence by purchasing food and drinks for witnesses and lunch for the jury, by concealed, altered or shortened video interviews, by violating Rule 600, by violating Rule 704, and by concealing evidence favorable and exculpatory to [appellant]?

3. Whether the PCRA Court abused its discretion or committed an error of Law by denying PCRA relief where the PCRA proceedings were rendered fundamentally unfair by sequestering defense witnesses and not Commonwealth [] witnesses, by permitting the [Commonwealth witnesses] to use and enter a partial Rule 600 transcript without disclosure or availability of the complete Rule 600 transcript, and by accepting testimony contrary to authenticated demonstrable evidence?

4. Whether the PCRA Court abused its discretion or committed an error of Law by denying PCRA relief where [appellant] pled and presented unconstitutional mandatory minimum sentencing and due process issues?

5. Whether the PCRA hearing was rendered fundamentally unfair by the ineffectiveness of PCRA Counsel that failed to properly communicate with [appellant], failed to subpoena and present expert witnesses, and affidavits, regarding Rule 600 and negotiated plea agreement issues?

Appellant's brief at 4-6. For the ease of our discussion, we have elected to address appellant's claims in a slightly different order than presented in his brief.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

We begin by addressing appellant's multiple claims of trial counsels' purported ineffectiveness.[3] We note that although "Issue 1" in appellant's "Statement of Questions Involved" raises 10 distinct claims of ineffectiveness, appellant has briefed only 5 of these ineffectiveness claims in the "Argument" portion of his *pro se* brief. Accordingly, we will limit our appellate review to those claims.

Specifically, appellant contends that his trial counsel were ineffective for: (i) failing to properly raise a Pa.R.Crim.P. 600 issue with respect to Nos. CP-53-CR-0000057-2005 and CP-53-CR-000058-2005; (ii) failing to argue that the trial court's delay in sentencing him resulted in prejudice, pursuant to Pa.R.Crim.P. 704; (iii) failing to reduce his negotiated guilty plea to writing; (iv) failing to object to the fact that members of the jury were released for lunch at the same time as the Commonwealth's witnesses; and (v) failing to call an expert witness to discuss how false memory syndrome could affect his accusers' memories. (Appellant's brief at 13, 19, 22, 24, 26, and 27.)

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

---

[3] The record reflects that appellant was represented at various points during trial by both James Rague, Esq. and George Lepley, Esq. (collectively, "trial counsel").

42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." **Commonwealth v. Charleston**, 94 A.3d 1012, 1020 (Pa.Super. 2014), **appeal denied**, 104 A.3d 523 (Pa. 2014) (citation omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Commonwealth v. Johnson**, 966 A.2d 523, 533 (Pa. 2009) (citations and internal quotation marks omitted).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa.Super. 2011), **appeal denied**, 30 A.3d 487 (Pa. 2011) (citation omitted). Additionally, we note that "counsel cannot be held ineffective for failing to pursue a meritless claim[.]" **Commonwealth v. Hall**, 867 A.2d 619, 632 (Pa.Super. 2005), **appeal denied**, 895 A.2d 549 (Pa. 2006).

After a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, it is our determination that appellant's ineffectiveness claims warrant no relief. The PCRA court comprehensively discussed the five ineffectiveness claims briefed by appellant and concluded that they were either meritless

and/or his trial counsel had a reasonable strategic basis for his decisions. (*See* PCRA court opinion, 11/13/15 at 3-12, 16-18.) We have reviewed the record in its entirety and have considered the merit of appellant's arguments. Following our careful consideration, we find that the PCRA court's conclusions are supported by competent evidence and are clearly free of legal error. Accordingly, we adopt the PCRA court's November 13, 2015 opinion as our own with regard to appellant's ineffectiveness of trial counsel claims.

Appellant next argues that the PCRA court erred in failing to conclude that the Commonwealth committed prosecutorial misconduct "by purchasing food and drinks for witnesses and lunch for the jury, by conceal[ing], alter[ing] or shorten[ing] video interviews, by violating Rule 600, by violating Rule 704, and by concealing evidence favorable and exculpatory to [appellant]." (Appellant's brief at 25-28.)

This court has long recognized that, "to be entitled to PCRA relief, a petitioner must plead and prove, *inter alia*, that the allegation of error has not been previously litigated or waived. An issue is waived if it could have been raised prior to the filing of the PCRA petition, but was not." *Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa.Super. 2007), *appeal denied*, 940 A.2d 365 (Pa. 2007) (citation omitted); *see also* 42 Pa.C.S.A. § 9544(b) (stating, "an issue is waived if the petitioner could

have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding.").

Instantly, the record reflects that appellant could have pursued claims of alleged prosecutorial misconduct on direct appeal, but failed to do so. Accordingly, we find these claims waived.

Appellant next argues, albeit briefly, that the PCRA court abused its discretion "by sequestering defense witnesses and not Commonwealth []witnesses, by permitting the [Commonwealth] to use and enter a partial Rule 600 transcript without disclosure or availability of the complete Rule 600 transcript, and by accepting testimony contrary to authenticated demonstrable evidence." (Appellant's brief at 29.) Upon review, we find that appellant's argument on this issue is comprised primarily of boilerplate allegations and fails to include any citation to the certified record where this error allegedly occurred. Accordingly, we deem this claim waived. *See Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa.Super. 2006), *appeal denied*, 920 A.2d 831 (Pa. 2007) (concluding that arguments which are undeveloped and lack citation to factual background or the certified record are waived); *see also* Pa.R.A.P. 2119(c), (d).

Appellant also raises multiple claims wherein he references appellate and PCRA counsel's purported ineffectiveness in failing "to properly communicate with [him] regarding PCRA issues and exhibits" and "subpoena and present expert witnesses[] and affidavits[] regarding [his] Rule 600 and

negotiated plea agreement issues." (Appellant's brief at 34-37.) Appellant

further opines that counsel was ineffective "by failing to plead, present and

prove the illegal sentence issues." (*Id.* at 39.)[4]

Our supreme court has set forth the proper framework for alleging a

layered ineffective assistance of counsel claim in the context of the PCRA:

> Succinctly stated, a petitioner must plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action. In addition, a petitioner must present argument, in briefs or other court memoranda, on the three prongs of the [ineffectiveness] test as to each relevant layer of representation. . . . [T]his means that the arguable merit prong of the [ineffectiveness] test as to the claim that appellate counsel was ineffective in not raising trial counsel's ineffectiveness consists of the application of the three-prong [ineffectiveness] test to the underlying claim of trial counsel's ineffectiveness. If any one of the prongs as to trial counsel's ineffectiveness is not established, then necessarily the claim of appellate counsel's ineffectiveness fails. Only if all three prongs as to the claim of trial counsel's ineffectiveness are established, do prongs 2 and 3 of the [ineffectiveness] test as to the claim of appellate counsel's ineffectiveness have relevance, requiring a determination as to whether appellate counsel had a reasonable basis for his course of conduct in failing to raise a meritorious claim of trial counsel's ineffectiveness (prong 2) and whether petitioner was prejudiced by appellate counsel's course of conduct in not raising the meritorious claim of trial counsel's ineffectiveness (prong 3).

---

[4] The record reflects that Ronald Travis, Esq. represented appellant on direct appeal, and Richard W. McCoy, Esq. represented appellant during the early stages of his PCRA.

*Commonwealth v. Reid*, 99 A.3d 470, 482 (Pa. 2014), quoting *Commonwealth v. McGill*, 832 A.2d 1014, 1023 (Pa. 2003).

Our review of the record reveals that appellant has failed to brief his layered ineffectiveness claims by applying the three-prong ineffectiveness test to each level of representation. Moreover, as appellant has failed to adequately demonstrate that the underlying claims of trial counsel's purported ineffectiveness were *of arguable merit,* his PCRA counsel cannot be deemed to be ineffective in failing to pursue these meritless claims. A determination that trial counsel rendered ineffective assistance is a prerequisite to finding that any subsequent counsel was himself ineffective, and as discussed, no such findings were demonstrated in this case. *See*, *e.g.*, *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa.Super. 2010); *see also Hall*, 867 A.2d at 632 (holding that counsel cannot be found ineffective for failing to raise a claim that is devoid of merit). Accordingly, appellant's claim that his PCRA counsel rendered ineffective assistance must also fail.

Lastly, appellant argues that the PCRA court erred in failing to conclude that his mandatory minimum sentence, imposed pursuant to

42 Pa.C.S.A. § 9718,[5] was illegal under **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013), and this court's subsequent decision in **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa.Super. 2014), **affirmed**, 140 A.3d 651 (Pa. 2016). (Appellant's brief at 30-33.)

In **Alleyne**, the United States Supreme Court held that the Sixth Amendment requires that "[a]ny fact that, by law, increases the penalty for

---

[5] Section 9718, **Sentences for offenses against infant persons**, provided in relevant part, as follows:

**(a) Mandatory sentence.--**

(1) A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows:

18 Pa.C.S. § 2702(a)(1) and (4) (relating to aggravated assault)--not less than two years.

18 Pa.C.S. § 3121(a)(1), (2), (3), (4) and (5) (relating to rape)--not less than ten years.

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)--not less than ten years.

18 Pa.C.S. § 3125(a)(1) through (6) (relating to aggravated indecent assault)-- not less than five years.

42 Pa.C.S.A. § 9718(a)(1).

a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S.Ct. at 2155 (citation omitted). Thereafter, in *Wolfe*, a panel of this court held that the version of Section 9718 that was in effect from January 1, 2007 until August 17, 2014, was unconstitutional in its entirety, in light of *Alleyne* and subsequent decisions by this court. *Wolfe*, 106 A.3d at 806, citing, *inter alia*, *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014), *appeal denied*, 121 A.3d 496 (Pa. 2015) (*en banc*) (as "stand[ing] for the proposition that mandatory minimum sentencing statutes in Pennsylvania of this format are void in their entirety"). Appellant maintains that because Section 9718 was invalidated by *Alleyne*, he is entitled to be resentenced without the application of any mandatory minimum sentencing provisions. (Appellant's brief at 32-33.) We disagree.

Instantly, we recognize that appellant was sentenced in 2006, and *Alleyne* was decided on June 17, 2013. Contrary to appellant's contention, this court has expressly rejected the notion that *Alleyne* applies retroactively to cases on collateral review. *See Commonwealth v. Washington*, 142 A.3d 810, 814-815 (Pa. 2016) (holding that the *Alleyne* decision does not apply retroactively to collateral attacks upon mandatory minimum sentences advanced in PCRA proceedings); *see also Commonwealth v. Riggle*, 119 A.3d 1058, 1064 (Pa.Super. 2015) (stating that, "while this Court has held that *Alleyne* applies retroactively on direct

appeal, we have declined to construe that decision as applying retroactively to cases during PCRA review"). Accordingly, we agree with the PCRA court that **Alleyne** and its progeny do not apply retroactively to the instant matter, which was already at the PCRA review stage at the time **Alleyne** was decided.[6]

Based on the foregoing, we find no error on the part of the PCRA court in dismissing appellant's second amended petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2016

---

[6] To the extent that appellant further contends that his trial counsel were ineffective for failing to challenge the illegality of his sentence on the basis of **Alleyne**, we find that he is not entitled to relief. (**See** appellant's brief at 24.) As discussed, this underlying sentencing claim is meritless, and "counsel cannot be held ineffective for failing to pursue a meritless claim[.]" **Hall**, 867 A.2d at 632.

COMMONWEALTH OF
PENNSYLVANIA

vs.

BRYAN MOYER,
          Defendant

: IN THE COURT OF COMMON PLEAS
: OF POTTER COUNTY, PENNSYLVANIA
:
:
:
:
: NOS. 57, 58, AND 138 OF 2005
: CRIMINAL DIVISION

## PROCEDURAL HISTORY, DISCUSSION, AND ORDER ON THE PETITIONER'S SECOND AMENDED PCRA PETITION

## PROCEDURAL HISTORY

In late 2004 and early 2005 the Petitioner was charged at the three above-captioned case numbers with several counts relating to sexual incidents involving multiple children. Prior to the Petitioner's preliminary hearing, sometime in February of 2005, the Petitioner, his counsel, James Rague and District Attorney Jeff Leber met and discussed the possibility of a plea agreement. At the Petitioner's preliminary hearing on March 24, 2005 the Petitioner did not mention any plea agreement and the Petitioner's cases were bound over for trial. The Petitioner filed a pretrial motion seeking to dismiss the case on Pa.R.Crim.P. 600 grounds; however, the motion was dismissed by memorandum opinion on February 3, 2006. Following a jury trial which occurred from April 4th through April 7th, 2006, the Petitioner was convicted of numerous offenses and, following a sentencing reduction, was sentenced to a period of incarceration of 19 years and 3 months to 46 years.

The Petitioner filed post sentence motions, including a motion relating to Pa.R.Crim.P. 704, which was denied. The Petitioner appealed to the Pennsylvania Superior Court which affirmed the trial court on January 3, 2008. The Petitioner sought an allowance of appeal with the Pennsylvania Supreme Court which was denied on November 17, 2008. The Petition filed a

1

timely *pro se* PCRA Petition on October 21, 2009 and counsel was appointed by Judge John Leete (now Senior Judge) on October 28, 2009. After the appointment, the defense counsel accepted a law clerk position and failed to take action on behalf of the Petitioner. No amended petition was filed and it is unclear whether defense counsel was aware of the appointment as he was in the middle of transition to his new position. Thereafter, Judge Stephen Minor was elected President Judge of Potter County and took the bench in January 2010. No amended Petition was filed and neither defense counsel, nor the Defendant communicated with the Court. Thereafter on September 12, 2014 Judge Minor became aware of the matter when the Petitioner filed a *pro se* Amended PCRA Petition. New defense counsel was appointed and, with the assistance of counsel, the Petitioner filed a Second Amended PCRA Petition on February 5, 2015. Following multiple continuances a hearing was held on the Petitioner's Second Amended PCRA Petition on July 10, 2015. Accordingly, that Petition is ripe for decision.

## DISCUSSION

The Petitioner has raised twelve issues in his Second Amended PCRA Petition. The Petitioner indicated at the July 10, 2015 hearing that all of the issues he wished to raise are included in his Second Amended Petition.

Several of the Petitions claims are based on ineffective assistance of his various counsel. Counsel is deemed ineffective when the issue underlying the ineffectiveness claim is of arguable merit, the course of action chosen by counsel had no reasonable basis, and the ineffectiveness so prejudiced the petitioner's defense that he did not receive a fair trial. See Com. v. Milligan, 693 A.2d 1313, 1319 (Pa. Super. 1997); Com. v. Pierce, 498 A.2d 423, 425

2

(Pa. Super. 1985) aff'd 527 A.2d 973 (Pa. 1987).

**1. Ineffective Assistance of Counsel - Failure to Reduce a Plea to Writing**

The Petitioner argues that his counsel was ineffective for not reducing a plea offer he accepted to writing. He testified that District Attorney Jeff Leber made a plea offer to him on or about February 18, 2005 at an office in Coudersport in the presence of his wife and his attorney James Rague. When questioned on cross-examination the Petitioner testified that his wife was not present to testify at the July 10, 2015 hearing because she has a difficult time remembering details.

The Petitioner testified that the plea proposal was that he would plead guilty to one count each of rape and endangering the welfare of a child, the remaining charges would be *nolle prossed*, and the sentence would be 5 to 10 years. Additionally, the Commonwealth would grant the Defendant immunity and not prosecute other possible cases against the Defendant. He testified that he accepted the plea at that meeting and that District Attorney Leber wrote down the details on a piece of paper and indicated he would produce a formal writing for the Judge. Thereafter, the Petitioner testified that he never saw a written version of that plea offer, but that he told his brother, Ronald Moyer; his sister, Kathi Cain; his mother, Phyllis Moyer; and a friend, Susan Culver, that he had accepted a plea offer. The Petitioner testified he never rejected the plea, but was surprised when he later received a written offer with a recommended sentence of 7 ½ to 15 years with no immunity on other charges. He felt that District Attorney Leber had reneged on the 5 to 10 year offer and asked Mr. Rague to keep pushing to obtain the aforementioned plea. When asked on cross-examination why he did not seek to enforce the 5 to 10 year agreement through the Court, the Petitioner simply stated he

3

was not sure why that was not requested.

The Petitioner does remember rejecting other offers made by District Attorney Leber, including an offer with a recommended sentence of 15 to 30 years. He also recalls his primary trial counsel, James Rague, writing him letters requesting that he accept a plea offer. The Commonwealth offered a letter from Mr. Rague to the Defendant dated April 1, 2005 which mentions the Commonwealth was offering the Defendant a 7 ½ to 15 year sentence. Commonwealth Exhibit 2. The Commonwealth also offered a letter from Mr. Rague dated May 6, 2005 which again recounted that a 7 ½ to 15 year offer had been made to the Petitioner and that the Petitioner was refusing the same. Commonwealth Exhibit 3.

The aforementioned February meeting occurred prior to the preliminary hearing, which occurred on March 24, 2005. The Petitioner acknowledged that he did not bring up the plea at his preliminary hearing and stated he did not raise the issue because he had an attorney and did not know he could raise the issue. The Petitioner testified he did not meet with District Attorney Leber to discuss a plea after February of 2005.

Mr. Rague testified that he met with the Petitioner several times, both while he was in and out of jail. Mr. Rague testified that the Petitioner and his wife were both very involved in the trial strategy. The Petitioner's theory of defense was that the child-accusers were manipulated by officials. He testified there were many plea negotiations with both former District Attorney Leber and the District Attorney at the time of trial, Dawn Fink. The best plea offer Mr. Rague recalls receiving for the Defendant was 7 ½ to 15 year prison sentence. He stated that Mr. Leber never offer 5 to 10 years with immunity. Additionally, he testified that the Petitioner was never interested in any plea agreement whatsoever and that the Petitioner

4

never asked him to reduce a plea to writing. Mr. Rague does recall encouraging the Petitioner to accept a plea offered by Mr. Leber because he felt that the next District Attorney, Dawn Fink would offer a less favorable plea once she assumed the position. However, Mr. Rague testified that the Petitioner was not interested in pleading guilty and that he wanted to fight the charges.

Similarly, Attorney George Lepley, the Petitioner's other trial counsel, testified that the Petitioner was adamant that he was not going to plead guilty. Mr. Lepley recalls discussing a plea offer with a minimum term on 7 ½ years with Mr. Rague and the Petitioner. Ronald Travis, the Petitioner's counsel from post sentence through direct appeal, testified that he was never advised that there was a plea offer which had not been honored. The District Attorney at the time of trial, Dawn Fink, testified that she did not recall any plea agreements and that the Petitioner was not interested in pleading guilty.

The Petitioner's sister, Kathi Cain, testified that in late-January or February of 2005 the Petitioner indicated to her that a 5 to 10 year plea offer had been tendered to him. She also testified that the Petitioner indicated he was going to accept the plea offer, but that it needed to be reduced to writing. The Petitioner's friend, Susan Culver, testified that she had discussed the alleged plea agreement with the Petitioner. She recalls that in early or late spring of 2005 they discussed a possible plea bargain under which the Petitioner would get out of jail in 5, 7, or 10 years. She testified that she advised him if that was the offer he should seriously consider accepting it. She testified that Moyer never said for sure if he had accepted a plea offer because it was revoked by the District Attorney. The Petitioner's brother, Ronald Moyer, testified that the Petitioner told him on multiple occasions that he had accepted a plea offer of

5

7 to 15 years with a requirement of sex offender counseling.

The Court finds, based on all of the testimony offered regarding this issue, that the Petitioner was not offered a 5 to 10 year with immunity, and that he also did not request such a plea be reduced to writing. Mr. Rague, Mr. Lepley, and Ms. Fink all indicated that the Petitioner was not interested in pleading guilty as he was adamant he wanted to fight the charges. Additionally, the Petitioner did not raise the issue of failure to reduce a plea to writing at his preliminary hearing, nor did he mention the issue to his post sentence counsel, Mr. Travis. Though some of the Petitioner's friends and relatives recall the Defendant advising them that a plea offer being tendered, their recollections are not thoroughly consistent with each other's recollections, the Petitioner's recollection, or with the Attorneys' recollections. Only Kathi Cain testified in complete accord with the Petitioner's version of the facts. Based on the above testimony and the relative credibility of the witnesses, the Court reasons the Petitioner was not offered a plea offer of 5 to 10 year with immunity, and that he also did not request such a plea be reduced to writing. Additionally, no Plea was presented to the Court and accepted. Accordingly, this issue is not of arguable merit and counsel was not ineffective with regard to this issue. See Milligan, Supra.

**2. Ineffective Assistance of Counsel - Failure to Properly Raise Rule 600 Issue**

As stated in the Petition, this issue applied only to cases 57 and 58 of 2005. The Petitioner argues that his various counsel were ineffective for failing to properly raising the Petitioner's Rule 600 claim. The Petitioner argues that any continuance request made by Mr. Rague or Mr. Lepley prior to the March 24, 2005 preliminary hearing were ineffective as he had not yet retained them.

6

Pa.R.Crim.P. 600 requires that criminal trials commence within 365 days after a written complaint is filed, excluding any period during which the defendant requests a continuance or the defendant or the defendant's attorney is unavailable for trial.

The Petitioner testified that District Attorney Leber failed to appear at his initial preliminary hearing for case 58 of 2005 and that, although he was without counsel, he was willing to proceed. He claims the District Attorney requested a continuance at that time. The Petitioner testified that he never requested a continuance and that neither of his attorneys requested a continuance other than on continuance request by Mr. Lepley's of January 3, 2006 based upon his illness. He discussed the strategy of raising the Rule 600 issue with his attorneys.

Mr. Rague testified that he did represent the Petitioner at the times continuances were requested in these cases. He also testified that he did request the granted continuances. Furthermore, Mr. Rague stated he would have raised Rule 600 before the trial if there had been a valid issue. Mr. Lepley testified that he did request a continuance based upon his illness. Mr. Lepley recalls discussing Rule 600 with the Petitioner and recalls thinking there was no valid Rule 600 issue. Mr. Travis testified that he raised the Rule 600 issue as part of a post sentence motion. That motion was denied and Mr. Travis elected to not raise the issue on direct appeal as he felt the Petitioner would not have gained anything by including that argument as it was a weak one.

The Court finds the testimony of Mr. Rague, Mr. Lepley, and Mr. Travis to be credible and finds the Petitioner's testimony to the contrary to not be credible. Based upon the credible testimony and Magisterial District Court records the Court finds that Mr. Rague was representing the Petitioner at the time he requested continuances in this matter. Commonwealth Exhibit 8 and

7

9. Similarly, the Court finds Mr. Lepley was representing the Petitioner at the time he requested a continuance in this matter.

At case 57 of 2005 the Petitioner was charged on February 2, 2005. The Petitioner, through Mr. Rague, requested to continue his preliminary hearing scheduled for February 9, 2005 and then did the same for the preliminary hearing scheduled for February 17, 2005. Commonwealth Exhibit 8. The preliminary hearing was continued and eventually held on March 24, 2005. The Petitioner filed a motion for continuance on January 3, 2006 because the Petitioner's attorney, Mr. Lepley, was ill. This motion expressly waived the Petitioner's right to a speedy trial under Rule 600. The motion was granted, and the proceeding was continued to January 30, 2006. The trial commenced 63 days later, on April 3, 2006.

For Rule 600 purposes, 356 days passed between the filing of the complaint and the beginning of the trial, as follows: 7 days beginning on February 2, 2005, plus 286 days beginning on March 24, 2005, plus 63 days beginning on January 30, 2006. Therefore, there is no Rule 600 violation with respect to case 57 of 2005.

Similarly, there is no Rule 600 violation in case 58 of 2005. At case 58 of 2005 the Petitioner was charged on December 15, 2004. The Petitioner, through Mr. Rague, requested to continue his preliminary hearing scheduled for December 21, 2004, and did the same for the preliminary hearings scheduled for January 26, 2005 and February 17, 2005. Commonwealth Exhibit 9. The Preliminary hearing was continued and eventually held on March 24, 2005. Thereafter, cases 57 and 58 of 2005 proceeded on the same schedule. Therefore, only 355 days passed between the filing of the complaint and the beginning of the trial, as follows: 6 days beginning on December 15, 2004, plus 286 days beginning on March 24, 2005, plus 63 days beginning on January 30, 2006.

It is clear from the record and the testimony of former counsel that the Petitioner is not entitled to relief under Rule 600 and, accordingly, this issue is without arguable merit. Therefore, counsel was not ineffective with regard to this issue. See Milligan, Supra.

### 3. Prosecutorial Misconduct - Purchase of Drinks and Food

The Petitioner argues that the Commonwealth exerted undue influence on various witnesses/victims as the Petitioner believes a police officer and/or a Commonwealth attorney purchased food or drinks for Commonwealth's witnesses. The Petitioner believes this may have been seen by the jury and could have influenced their decision.

The Petitioner was not able to offer any evidence that District Attorney Fink, Assistant District Attorney Mary Morris, or any police officer purchased food or drinks for any witnesses/victims. Ms. Fink, testified that she did not recall having any discussion with any person regarding the buying of food or drinks for any victims and the same was never brought to her attention. Ms. Morris testified that she was similarly unaware of any food or drinks being purchased for any victims. Mr. Lepley, testified that he never heard anything regarding the purchase of food or drinks for any witnesses. Mr. Travis testified that the Petitioner never made him aware of this issue. The lead criminal investigator in this case, Corporal Kevin Havern, testified that he did not recall this issue coming up at trial.

The Court finds that the Petitioner not credible on this issue as there is no evidence that law enforcement or Commonwealth attorneys purchased drinks or food for witnesses at the time of trial.

### 4. Prosecutorial Misconduct - Purchase of Lunch for Jury

9

The Petitioner believes that the Assistant District Attorney, Ms. Morris, had lunch members of the jury during the trial and that Ms. Morris paid for the juror's lunches. The Petitioner elected to withdraw this claim as he cannot provide any witnesses to address the same.

**5. Ineffective Assistance of Counsel - Reference to Other Alleged Victims**

The Petitioner argues that his counsel was ineffective for referencing other alleged victims during the trial. Mr. Rague testified that he made reference to other alleged victims during the trial because multiple other alleged victims had been found to not be credible and were thus not presented by the Commonwealth. Mr. Rague testified that this was part of a deliberate trial strategy discussed with the Petitioner that a "club" had been formed by alleged victims who were conspiring together to hurt the Petitioner. The strategy was that by showing that other members of this "club" of children had been found to be non-credible victims the jury would be more likely to believe the testifying victims were non-credible; that perhaps the "club" had fabricated the stories of abuse.

The Court finds that Mr. Rague had a reasonable basis for making reference to other non-credible alleged victims as such references were made as part of a trial strategy and thus counsel was not ineffective with regard to this issue. See Milligan, Supra.

**6. Ineffective Assistance of Counsel - Failure to Effectively Argue Rule 704 Issue**

The Petitioner argues that his counsel failed to effectively argue a meritorious Rule 704 issue and that he was prejudiced by that failure.

"To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the allegation of error has not been previously litigated[.]" 42 Pa.C.S. § 9543. "For purposes of this [the PCRA], an issue has been previously

litigated if: . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S. § 9544.

Here, the Rule 704 issue has been previously litigated as the Pennsylvania Superior Court ruled on the merits of this issue, and affirmed this Court denial of the Petitioner's post trial Rule 704 motion, in its Opinion of January 3, 2008. The Petitioner sought, but was ultimately not granted, allowance of appeal to the Pennsylvania Supreme Court. Thus, the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue and the Petitioner is not eligible for relief on this issue.

The Petitioner attempts to keep this issue alive by couching it as an ineffective assistance of counsel issue. "[O]ne cannot avoid the restrictions on raising a previously litigated issue by claiming that counsel was ineffective in his or her method of advocating the issue." Com. v. McCall, 786 A.2d 191, 194 (Pa. 2001) (citations omitted). See also Com. v. Collins, 888 A.2d 564, 572 (Pa. 2005). Thus, this issue being previously litigated, it appears the Petitioner is not eligible for relief even though he qualified this as being an ineffective assistance of counsel claim. Insofar as that issue may stand separately from the previously litigated issue above, the Court finds the Petitioner is not entitled to relief.

Under Pa.R.Crim.P. Rule 704(a)(1) "sentence in a court case shall ordinarily be imposed within 90 days of conviction[.]" "When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension." Rule 704(a)(2). "[A] defendant who is sentenced in violation of [Rule 704] is entitled to a discharge **only where the defendant can demonstrate that the delay in sentencing prejudiced him or her.**" Com. v. Anders, 725 A.2d 170, 173 (Pa. 1999) (emphasis added).

11

Here, the Petitioner was convicted on April 7, 2006 and was sentenced on September 8, 2006. Judge Leete explained that the Petitioner was not sentenced within ninety days because of a delay caused by the necessity of a report from the Pennsylvania Sexual Offenders Assessment Board prior to sentencing. Such a delay is "good cause" for sentencing the Petitioner beyond the ninety-day limit. Additionally, the Petitioner has never shown at any proceeding that the delay in sentencing prejudiced him and, accordingly, he is not entitled to relief. See Anders, Supra. As the issue is without arguable merit counsel was not ineffective with regard to this issue. See Milligan, Supra.

**7. Ineffective Assistance of Counsel - Failure to Object to the Altered/Shortened Video interview & Prosecutorial Misconduct - Alteration/Shortening of Video Interview**

Prior to the time of trial a video was created of the children involved in this case being interviewed. The Petitioner believes that his trial counsel was ineffective for not showing the video to the jury and additionally that the Commonwealth may have altered the video. The Petitioner claims that Mr. Travis told him that 15 minutes of the video were missing. The Petitioner stated that the 15 minutes of footage may have been broken up and that he wasn't sure what had happened, but he was concerned about video tampering.

Mr. Rague testified that he had considered showing the video to the jury, but decided it would not be beneficial to the Petitioner's defense. Mr. Rague explained that there were many disclosures in the video, several of which would not be helpful to the defense. He also indicated that he fully explained that fact to the Petitioner. Mr. Lepley testified that he was not aware of any tampering with the footage. He further indicated the video was not helpful to the defense as the children made numerous allegations against the Petitioner in the video. Mr. Travis testified

12

that he did not recall any tampering issues with the video and had no recollection of discussing the issue with the Petitioner.

The Court finds that Mr. Rague and Mr. Lepley had a reasonable basis for not showing the video to the jury as it contained disclosures from the children which they felt would harm the Petitioners defense and thus counsel was not ineffective with regard to this issue. See Milligan, Supra. Additionally, the Court finds that there is no credible evidence that anyone tampered with the aforementioned video.

**8. Ineffective Assistance of Counsel - Failure to Appropriately Challenge the Replacement of a Juror**

The Petitioner believes that a juror was improperly replaced during the trial and that his counsel was ineffective in challenging that replacement. During the trial juror Mrs. Crossin was replaced after she made the Court aware that through her work at Charles Cole Hospital she knew the Petitioner's wife, Sandy Moyer. Pages 328-336 of the trial transcript detail the disclosure. Mrs. Crossin stated several times that she believed she would be biased in favor of Mrs. Moyer's testimony based on her knowing Mrs. Moyer. Though defense counsel objected to the removal of the Mrs. Crossin as a juror, based on her numerous statements that she was biased the removal was appropriate.

The Petitioner also alleges that he believes deliberations had begun prior to this removal and that Mrs. Crossin was bullied by other jurors seeking her removal. The Trial Court conducted a thorough colloquy with Mrs. Crossin prior to removing her as a juror and there was no mention of premature deliberation or bullying. Furthermore, the Defendant has not presented any evidence to substantiate his claim that the jury was already deliberating and that anyone bullied Mrs. Crossin seeking her removal. The trial transcript indicates otherwise.

13

The Court finds the removal of Mrs. Crossin was appropriate and thus the Petitioner's claim regarding the same is not of arguable merit. Additionally, the Court finds the replacement of Mrs. Crossin by Ms. Mueller did not prejudice the Petitioner's defense. For both of those reasons counsel was not ineffective with regard to this issue. See Milligan, Supra.

**9. Ineffective Assistance of Counsel - Failure to Sufficiently Object to Expert Witness**

The Petitioner claims that his trial counsel was ineffective for failing to object to the Commonwealth calling William Allenbaugh at the time of trial. The Petitioner recalls his counsel objecting, but does not believe it was done at the appropriate time. He further believes that Mr. Allenbaugh was not appropriately qualified as an expert witness and that his attorney did not object to that failure to qualify. The Court notes that Mr. Allenbaugh was not called as an expert witness, but was permitted to testify as to hearsay statements disclosed to him when he interviewed the children-accusers in this case. Furthermore, the Petitioner takes issue with the fact that his counsel did not object to parents being present with their children when Mr. Allenbaugh interviewed the children.

The trial transcript shows numerous instances of Mr. Rague objecting to Mr. Allenbaugh's testimony. Mr. Rague initially made a request for an offer of proof regarding Mr. Allenbaugh's testimony. Transcript pages 202-203. Mr. Rague then made substantial argument to the Court regarding which areas Mr. Allenbaugh could discuss. Ultimately, the Commonwealth elected to not call Mr. Allenbaugh as an expert to avoid some of the potential issues raised by Mr. Rague. Additionally, when Mr. Allenbaugh was permitted to testify about the children-accuser's hearsay statements Mr. Rague noted an ongoing objection. Transcript page 217. Later, Mr. Rague requested a sidebar, and he and Mr. Lepley participated in the same, at which time they further challenged the areas Mr. Allenbaugh could discuss. Transcript pages 228-229.

14

Twice again Mr. Rague objected to references to Mr. Allenbaugh's experiences with other children victims and the same were sustained. Transcript pages 232, 234. Then, Mr. Rague objected to Mr. Allenbaugh discussing a conclusion, which was effectively sustained. Transcript page 235. Next, Mr. Rague objected to Mr. Allenbaugh discussing expert-type testimony. Transcript page 236. The Court effectively sustained the objection and cautioned both the jury and the Commonwealth that Mr. Allenbaugh was not being offered as an expert. Again, Mr. Rague objected to Mr. Allenbaugh's testimony based on relevancy, and the Commonwealth was warned at sidebar to stay within the constraints previously outlined by the Court. Transcript page 237. Mr. Rague raised the same objection a moment later and after the Commonwealth rephrased the question the objection was overruled. Transcript page 239. Finally, Mr. Rague objected to Mr. Allenbaugh's testimony twice more. Transcript page 252. The first time the Court constrained Mr. Allenbaugh to only testify to direct observations. The second time the Court sustained the objection and directed the jury to disregard Mr. Allenbaugh's conclusions.

Based on the objections clearly stated on the record, many of which were sustained, the Court finds that the Petitioner's contention that his attorney was ineffective for failing to appropriately object to Mr. Allenbaugh's testimony is without arguable merit as Mr. Rague did appropriately object to the same. Accordingly, counsel was not ineffective with regard to this issue. See Milligan, Supra.

Regarding the Petitioners argument that his counsel should have objected to the children's parents being present for interviews with Mr. Allenbaugh, the Court is unaware of any meritorious objection in this regard. The fact that the parents may have been present during the children's interviewed may have been considered by the jury in addressing the weight of the testimony or credibility of the children, but is not objectionable. The Commonwealth argued that

the parents were present simply for the purpose of establishing rapport. The Petitioner was not able to address the Commonwealth's argument. Under the circumstances present in this matter the Court reasons it was wholly appropriate for the children's parents to be present and, accordingly, the Petitioner's claim to the contrary is without arguable merit. Thus, counsel was not ineffective with regard to this issue. See Milligan, Supra.

**10. Ineffective Assistance of Counsel - General Failure to Object to Hearsay and Other Inadmissible Testimony**

The Petitioner argues, in his Petition, that his counsel generally failed to raise appropriate objections to hearsay and other inadmissible testimony. Though this issue was present in the Petition the Petitioner failed to present this issue at his PCRA hearing. The Court has reviewed the trial transcript and notes that the Petitioner's trial counsel made numerous objections at trial. Accordingly, the Court finds the Petitioner's claim regarding a general failure of his trial counsel to object to inadmissible testimony is without arguable merit and counsel was not ineffective with regard to this issue. See Milligan, Supra.

**11. Ineffective Assistance of Counsel - Failure to Call Available Character Witnesses and an Available Expert Witness**

The Petitioner claims that he had various appropriate character witnesses available to testify, but that his trial counsel failed to call such witnesses. He claims such witnesses included Ronald Moyer, Phyllis Moyer, Susan Culver, and Kathi Cain. Additionally, the Defendant believes he retained an expert witness to discuss how false memory syndrome could be affecting his accuser's memories. The Petitioner testified that his trial counsel refused to call this expert.

The Court initially notes that the Defendant was able to call several character witnesses not named above. Additionally, Judge Leete ruled on an objection and disallowed Dana

16

Reynolds, Tony Reynolds, and Jeffrey Myers from testifying as character witnesses as they had not been in the area of the Petitioner for approximately seven years. See Com. v. Fisher, 764 A.2d 82, 87 (Pa. Super. 2000) ("Character means one's general reputation in the community.") (citations omitted). The Petitioner testified that in 2006 Ronald Moyer and Phyllis Moyer lived in Berks County, Susan Culver had moved to Las Vegas, Nevada, and Kathi Cain lived in Royersburg, Pennsylvania, near Philadelphia. Thus, the Court finds the four above-referenced individuals would not have had knowledge of the Petitioner's reputation within the community and their testimony on the Petitioner's character would have been inadmissible if they had been called. See Fisher, Supra.

Thus, the Petitioner's trial counsel had a reasonable basis for not calling them and thus counsel was not ineffective with regard to this issue. See Milligan, Supra. Additionally, Mr. Lepley and Mr. Rague testified that they called every witness that the Petitioner had insisted upon and that the Petitioner was very actively involved in his case. The Court finds the former counsels' testimony to be credible and the Petitioner's testimony to the contrary to not be credible. Accordingly, the Court finds the Petitioner's trial counsel was not ineffective as the Petitioner's claim is without arguable merit. See Milligan, Supra.

Regarding calling a defense expert witness Mr. Lepley testified that he determined that the testimony of the defense expert would not have been helpful to the defense. Furthermore, again Mr. Lepley and Mr. Rague testified that they called every witness that the Petitioner had insisted upon and that the Petitioner was closely involved in all trial strategy. The Court finds that trial counsel had a reasonable basis for not calling the defense expert as they reasoned he would not be helpful to the defense. Additionally, the Court finds the Petitioner's claim is without arguable merit as both of his trial attorneys indicated the called every witness insisted

17

upon by the Petitioner. The Court finds former counsels' testimony to be credible and the Petitioner's testimony to the contrary to not be credible. For those reasons counsel was not ineffective with regard to this issue. See Milligan, Supra.

## 12. Unlawful Sentence - Alleyne

On December 24, 2014 the Pennsylvania Superior Court issued a decision in Com. v. Wolfe, 106 A.3d 800 (Pa. Super. 2014) appeal granted, 63 MAL 2015, 2015 WL 4755651 (Pa. Aug. 12, 2015) which invalidated 42 Pa.C.S. § 9718, which had previously provided for mandatory minimum sentences for certain crimes against infant persons. The Wolfe decision was based upon the decisions in United States Supreme Court case Alleyne v. U.S., 133 S. Ct. 2151 (2013) and the Pennsylvania Supreme Court case Commonwealth v. Newman, 99 A.3d 86 (Pa. Super. 2014). The Petitioner was sentenced based upon the mandatory minimum sentencing provisions of 42 Pa.C.S. § 9718. As that mandatory minimum sentencing provisions was invalidated, the Petitioner argues that he is entitled to be resentenced without the application of any mandatory minimum sentences.

However, as discussed in Riggle:

In Commonwealth v. Newman, 99 A.3d 86 (Pa. Super. 2014) (relying upon Commonwealth v. Watley, 81 A.3d 108, 118 (Pa. Super. 2013) (en banc )), we noted that Alleyne will be applied to cases pending on direct appeal when Alleyne was issued. Appellant seeks to apply Newman's ruling in this PCRA context and to afford Alleyne full retroactive effect based upon Watley and Newman, both of which were direct appeals.

Importantly, in Watley, this Court distinguished between applying Alleyne on direct appeal and on collateral review. We noted that a case may be retroactive on direct appeal, but not during collateral proceedings. Watley, supra at 117 n. 5. **Thus, while this Court has held that Alleyne applies retroactively on direct appeal, we have declined to construe that decision as applying retroactively to cases during PCRA review.**

Com. v. Riggle, 119 A.3d 1058 (Pa. Super. 2015) (emphasis added).

18

Here, the Petitioner's case was not pending on direct review when the _Alleyne_ decision was issued. The Petitioner originally appealed to the Pennsylvania Superior Court, which affirmed the decision on December 12, 2008. The Petitioner sought an allowance of appeal to the Pennsylvania Supreme Court, which was denied on November 17, 2008. Accordingly, the _Alleyne_ decision, and its progeny, does not apply retroactively to the Petitioner's case, which was already at the PCRA review stage when Alleyne was decided on June 17, 2013.

Ultimately, none of the issue raised by the Petitioner in Second Amended PCRA Petition warrants any relief and the same shall be denied.